IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 98-20827
Summary Calendar
_____

BRENDA DUBOSE,

Plaintiff-Appellant,

versus

LYONDELL-CITGO REFINING COMPANY, LTD.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Texas
(H-97-CV-1029)
_____

September 23, 1999

Before JOLLY, JONES, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Brenda Dubose appeals the district court's granting of summary judgment for her employer Lyondell-Citgo Refining Company Limited ("LCR"). She argues that the district court erred when it concluded that her claims for sex and pregnancy discrimination failed as a matter of law. As we find no error on the part of the district court, we affirm.

Brenda Dubose was employed as a security representative at LCR's Houston petrochemical refinery. As a member of LCR's Health and Safety Department, the security representatives, or security

_____

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

guards as they were commonly referred to, reported to Mark Steinfort, security supervisor. Dubose was assigned to work the main gate of the refinery located between an incoming and outgoing roadway of the refinery. The main gate house was a small building with glass on three sides. Dubose was responsible for opening the main gate entrance to allow traffic in and out of the refinery, dispatch by radio the security guard who was on patrol duty, manage the radio communications center for the refinery, handle the procedure for responding to refinery emergencies, and doing necessary paperwork.

In early January 1994, Dubose became pregnant with the child of her former husband, Danny Dubose. She reported her pregnancy to the LCR Human Resources Department soon thereafter. Sometime in the beginning of February, Dubose began having a romantic affair with Gary Williams, a shift supervisor in the LCR refinery's Sulfur Recovery Unit ("SRU").

On February 22, Dubose reported to her supervisor, Mark Steinfort, and to Lisa McCorquodale of the LCR Human Resources Department that her ex-husband, Danny Dubose, who was employed by one of the refinery's on-site contractors, was harassing and threatening her by telephone and in person at the refinery. She further reported that on February 18, he left a note on the windshield of her truck calling her a "slut," while it was parked at the nearby Gateway Motel. In her deposition, she admits that she was at the Gateway Motel with LCR employee Gary Williams

engaged in sexual congress, while Williams was suppose to be on duty at the SRU.

In late February, LCR's Human Resources Department received reports from security guards at the refinery about misconduct by Dubose and Williams, specifically, that Dubose allowed Williams to spend extended periods of time in the main gate house with her during working hours; that Dubose and Williams left the refinery together when Williams was on duty; and that Dubose, after the end of her work shift, drove into the refinery, without proper authorization, to visit Williams at the SRU. When questioned during deposition about the truthfulness of such reports, Dubose admitted to engaging in all of the reported conduct.

On February 21, Eric Finck, a security employee whom Dubose was responsible for training, reported that Dubose left him alone in the guard house for nearly three hours and returned accompanied by Williams. Upon returning to the guard house, Finck observed Dubose and Williams kissing. Finck further reported, similar to the reports received from other LCR security guards, that on at least two occasions, he observed the security guards standing outside the gate house at shift change due to the buildings occupation by Dubose and Williams. When asked at deposition about the truthfulness of these accusations, Dubose admitted them all with the exception of the kissing.

On February 24, Dubose met with Mark Steinfort and Lisa McCorquodale regarding her prior reports of improper behavior by

her husband. Steinfort informed Dubose that LCR intended to notify Danny Dubose's employer of his improper behavior. Dubose was then asked about the validity of the reports received from other LCR security guards regarding her inappropriate behavior with Williams. Following the meeting, Dubose was suspended with pay pending further investigation into these allegations.

On March 1, Ms. McCorquodale, Mr. Steinfort, and Human Resources Supervisor, Laurie Repnak Calaway, met with Dubose to inform her that following the investigation into the allegations of her misconduct with Williams, she was being terminated for neglecting her employment duties. Specifically, Dubose was terminated for allowing Williams into the gate house for extended periods of time, because she was an unauthorized visitor to SRU control room, and because she was observed hugging and kissing Mr. Williams in the main gate house during her shift and while training another security employee. On the same day, following a suspension and investigation into the allegation of misconduct, Williams was also terminated from LCR. On March 28, 1997, Dubose filed a charge of discrimination against LCR pursuant to Title VII alleging improper discriminatory termination based on sex and/or pregnancy. Following LCR's motion for summary judgment, the district court granted summary judgment for LCR on both counts.

The only evidence, other than Dubose's conclusory assertions and nonrelevant contentions that other conduct more disruptive and dangerous than hers by male employees resulted in lesser discipline

4

by LCR, is a series of various personnel records of employees of LCR. After reviewing this evidence, it is clear that none of the employees in these records are similarly situated to Dubose.[1] As correctly noted by the district court, none of the employees were security guards, and none of the violative acts engaged in by the employees were similar to those engaged in by Dubose. The only arguably similarly situated employee, Mr. Williams, was discharged for engaging in similar conduct.

After a review of the evidence in a light most favorable to Dubose, it is clear that she has failed to make a prima facie showing that she was treated differently from similarly situated individuals because of her sex. Furthermore, even if Dubose was able to establish a prima facie case, it is equally as clear that the proffered reasons for discharge offered by LCR are valid. Dubose was terminated for engaging in inappropriate behavior with a co-worker, and as a result of her failure to fulfill her job responsibilities. Dubose has admitted to engaging in the activities cited by LCR, which form the basis for these grounds of dismissal. Further, Dubose has failed to offer even one iota of evidence to show that these grounds are pretextual. Thus, because Dubose has failed to meet her burden, LCR is entitled to summary judgment on this issue.

---

[1]The plaintiff points to employment records detailing acts of destruction of company property, use of profanity, sleeping on the job, and use of company gasoline for personal use.

Dubose has failed to offer any credible evidence on the issue of disparate treatment due to her pregnancy. The only evidence offered consists of a series of innuendoes made by various company employees, and her own subjective belief that the timing of her announcement of her pregnancy and her termination "is suspicious." This evidence can hardly be sufficient to establish a <u>prima facie</u> case for discrimination based on pregnancy. As such, LCR is entitled to summary judgment on this issue.

We are in full agreement with the district court that Dubose has failed to meet her burden of proof and has failed to raise any genuine issue of material fact for trial. The judgment of the district court is

A F F I R M E D.